## Russell Index Co. v. Susquehanna County Commissioners.

*Public records—Indexing—Contract for indexing—Transference of sheriff and tax deed indices to the recorder of deeds—Acts of May 26, 1891, and May 8, 1919.*

1. The performance of public work by contract is not only the usual method adopted for carrying on such work, but the most satisfactory, and, in the absence of express provision in the statute to the contrary, it will be presumed the legislature did not intend to forbid such procedure.

2. Under the Act of May 26, 1891, P. L. 129, the Court of Common Pleas has the power to direct a re-indexing of the public records by contract, and it may direct that such contract shall be made by the recorder of deeds with a company controlling a particular method of indexing.

3. The Common Pleas may, under the Act of May 8, 1919, P. L. 160, direct that the sheriff and tax deeds shall be re-indexed in the office of the recorder of deeds, and include such records in a contract for re-indexing.

4. The purpose of the Act of 1919 was that, for the examination of records of titles, the indexing of all conveyances relating to real estate should be in one office, assuring facility of search and correctness of results.

5. In mandamus proceedings to compel the county commissioners to draw orders upon the county treasurer to pay under a contract for re-indexing the public records, the respondents cannot object that the price for such service was exorbitant and excessive.

6. The commissioners in such case had their remedy by injunction proceedings to prevent the awarding of the contract.

7. Under the Act of 1891, the county commissioners are the proper officers to draw orders on the county treasurer, and, if they refuse to do so, they may be compelled to act by mandamus.

Petition for mandamus and return. C. P. Susquehanna Co., April T., 1925, No. 49.

*T. A. Doherty,* for plaintiff; *G. E. Gardner,* for defendant.

SMITH, P. J., April 27, 1925.—The petition and return raise questions of law only; the latter denies the power and jurisdiction of the court to make the order of April Term, 1924, for the re-indexing of deeds and mortgages in the recorder's office of this county, and that they be hereafter indexed by the L. M. N. R. & T. System of the Russell Index Company, which appears as of No. 164, April Term, 1924, in this court.

That the court rightly so acted we have no doubt, as being authorized by the Act of May 26, 1891, P. L. 129. Its title is: "An act authorizing and empowering the Courts of Common Pleas of the several counties of this Com-

monwealth to change, alter and direct the mode of preparing and keeping indices in the several offices of record in said counties, and for the preparing, making and *substituting* new indices for old indices or parts thereof."

Section 1 of the act so "authorizes and empowers" the court whenever it shall appear *advisable*, on "inspection of such indices," by its order to *change* and *alter* the mode of preparing and keeping said indices . . . and to direct the mode in which said indices shall *thereafter* be prepared and kept."

Section 2 provides that the same authority is empowered to direct "new indices to be prepared and made of the *whole* or any part or parts of the indices theretofore prepared and kept . . . and to direct the mode in which said new indices shall be prepared and kept."

Section 3 provides that the necessary books "shall be purchased by the *proper officer* and paid for out of the county funds by order drawn on the treasurer of said county by the proper officers thereof."

It is then directed by section 4 that, upon such order by the court, the proper officer shall cause such indices to be prepared "in a fair, legible manner by some competent person or persons approved by said officers; the cost thereof to be paid out of the county funds upon orders drawn" as in section 3.

The Supreme Court of this State has expressly decided in the case of Nicely v. Raker, 250 Pa. 386, that under this Act of 1891 the Courts of Common Pleas have the *sole* power of action exercised by this court in the present proceeding. The opinion of Mr. Justice Frazer is an exhaustive and clear discussion of the principles involved and conclusive in determination in mandamus proceedings against the Controller of Northumberland County to compel him to draw the necessary orders upon the county treasurer to pay the expense of the ordered change in the method of indexing records in the recorder's office of that county, and affirmed the court below in entering judgment against the controller. We here note that the controller there occupied the same relation to such matters as the county commissioners in this county as to first approving the payment.

One of the contentions of the respondents at bar is the same as that raised in the above opinion as to the respondent there, which we quote: "Defendant's action in substance was a disapproval of the method adopted by the court for preparing the work, his contention being that the court was *without authority to direct a re-indexing of the records by contract*." (The underscoring is ours.) On this point the learned Justice said: "While the act is silent with respect to the power of the court to fix the price at which the work shall be done, this power *would seem* to be implied from the fact that the entire matter is within its regulation and control. . . . The fixing of a maximum price . . . may be considered as a precautionary measure, and additional safeguard adopted by the court, to prevent the letting of the contract at an exorbitant figure."

It is complained that our order encroached upon the prerogative of the recorder of deeds, in that we directed him to contract with the Russell Index Company to perform the services of the re-indexing. We note the recorder is not complaining; and, further, the system being under the patent of such company, it is obvious that they only were competent of performance.

The method directed and employed "by contract" is that approved and recommended by Mr. Justice Frazer in Nicely v. Raker, 250 Pa. 386 [391], in this language: "The performance of public work by contract is not only the usual method adopted for carrying on such work, but the most *satisfactory*, and, in the absence of express provision in the statute to the contrary, it will be presumed the legislature did not intend to forbid such procedure."

It was as a "precautionary measure," such as we have observed in the same opinion, that we safeguarded the transaction by designating three members of the Susquehanna County Bar to "inspect and supervise" the work as it progressed; that a bond of the index company with surety in penal sum of $10,000, increased from $5000, as had been proposed to secure a fulfillment of the contract and indemnify against damages resulting from any errors or omissions, and required that both the bond and contract be approved by the court before commencing the work which was done, preliminary to all of which we wish to acknowledge the benefit of the valuable services without pay of this same bar committee. We are perfectly satisfied that both the recorder and this court acted fully within their rights, with no restriction upon the former and no excess of power by the court.

As to the objection contained in the fourth paragraph of the respondents' return to the writ, that we exceeded our authority in directing a re-indexing in the "recorder's office" of sheriff and treasurer's deeds theretofore recorded and indexed in the prothonotary's office, and that only the prothonotary could be required to perform this service.

This would be true except for the provisions of the Act of May 8, 1919, P. L. 160, which changed the law as presently existing as to indexing such deeds, enacting that all such *"heretofore* entered in the Court of Common Pleas," viz., in the prothonotary's office, may be indexed in the office of the recorder of deeds in the regular grantee and grantor indices, or in a grantee and grantor index arranged in a separate book or books, known as the Sheriff and Tax Deed Index Books," and, in section 2, that the necessary books and services "be furnished and provided by the county commissioners and shall be paid for out of the county money."

It will be noted these deeds may be indexed in either one of two ways, viz., in the "regular grantee and grantor indices of deeds" as other deeds always required to be recorded and indexed in the recorder's office, or in a separate index book for the indexing of sheriff and tax deeds only, leaving it discretionary with the proper officers which to adopt.

Were the existing system of indexing to be continued, and for any reason required to be transcribed into new index books, the *separate* index system for sheriff and tax deeds would undoubtedly be favorably considered and probably adopted. But upon a change of system, as at bar, it is obvious that one index for all deeds would be preferable, and especially so when the indexing of such sheriff and tax deeds will appear in their chronological order of date of execution with other assurances of title to the same land conveyed; the convenience of search and more certain accuracy of results are a sufficient endorsement of such arrangement.

This Act of 1919 provides for such indexing, not in the prothonotary's office as theretofore, but in the recorder's office, with the records of which the prothonotary has nothing to do; the recorder of deeds, a different officer and another person, is their custodian.

The Act of May 26, 1891, P. L. 129, under which the court's order objected to at bar was made, provides that the *"proper officer"* shall "purchase" the necessary books and cause the indices to be prepared. This "proper officer" means such as is the incumbent of the particular office where the records are kept and indices required. By the Act of 1919, the sheriff and tax deed indices are transferred from the jurisdiction of the prothonotary and placed with the recorder of deeds, and thus it is apparent the latter is the "proper officer" denominated in the Act of 1891 subject to the court's order in ques-

tion here, and, therefore, the re-indexing of such deeds was properly incorporated therein.

The manifest purpose of the legislature in passing the Act of 1919 was that, for the purpose of examination of records of titles, the indexing of all conveyances relating to real estate should be in one office rather than in two, assuring facility of search and correctness of results, which in this county will result from the entry and compliance with the court's order under consideration.

By the fifth paragraph of the respondents' return to the writ, the direct charge is made that the "price exacted in the . . . contract is excessive and exorbitant, . . . merely an estimate upon an arbitrarily assumed basis."

As the court's order directing re-indexing, while providing it shall be done by the Russell Index Company under contract to be entered into with them by the recorder of deeds, does not incorporate therein the terms of such contract, this is appropriately an objection to the terms of such contract. Nevertheless, there was such an endorsement of its terms, including the price complained of, by vote of the members of the bar association of the county "after full discussion," as shown by secretary's certificate attached to the order made, so supervised after full investigation by a committee of three members of the bar, as well as by the court, and the terms of the contract indicating price having been first approved by such committee and the court, we feel this objection should receive some consideration, although, as we shall later observe, not proper to be raised at this time and in these proceedings, for this allegation, in substance, of an "abuse of discretion" lodged by statute applies to all, but which we are of opinion was properly and legally exercised and that the price is not a subject of complaint, but agreed upon after the careful safeguards of conscientious investigation, which we have mentioned, entirely fair and just and the interest of all concerned carefully conserved.

We have said this objection cannot be legally interposed here. The law provides both county commissioners and taxpayers an ample and appropriate remedy by proceedings by injunction in equity for "the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals:" 2 Purd. Dig., 1408. If ground of grievance was thought to exist, and for which ample time and opportunity has been afforded by notice of the order filed April 7, 1924, with bar and committee recommendations attached, actual recording of the contract July 25, 1924, in Letter of Attorney Book No. 12, page 473, in the recorder's office, which, together with the undertaking and prosecution of the work of re-indexing by Russell Index Company with a corps of clerks in the arbitration room of the court-house, to the point indicated by the bills presented for payment, was plain notice to any one of all the facts.

But in the closing paragraph of the respondents' return it is complained that the county has not had a day in court, but all of the proceedings in said petition set forth have been ex parte as to the county.

We concede the ex parte character of the proceedings, but the Act of 1891 interpreted by our court of last resort, by which all are bound, in Nicely v. Raker, 250 Pa. 386, so directs, and thus without desire or choice places the responsibility upon the court alone as in many other instances of legal action not rare or exceptional. To the same extent as by analogy, power and authority are in the same manner granted to other officers, apropos county commissioners, such as respondents at bar, concerning which we note illustrations as by the Act of June 18, 1895, P. L. 197: "The county commissioners . . . shall, at the proper cost of the respective counties, furnish the office furniture,

blank books and stationery required for each of the county offices where offices are located in the county buildings at the county seat; also printed court calendars and trial lists . . . for the use of officers and attorneys, and all needed fuel and light."

By the Act of April 15, 1834, P. L. 537, 541, it is their duty to appoint their clerk, fix the amount of his compensation, require him to give a bond for the faithful performance of his duties in such sum as they may designate.

In the discharge of these duties and many others, the county commissioners act *ex parte*, without the taxpayers or any one else having a "day in court," and it has never occurred to the court that it had any privilege, right or authority to interfere with them, and they would very promptly and rightfully disregard any such unwarranted interposition.

For some reason best known to the legislature, the authority at bar is thus unconditionally given to the court and made his duty to act without interference. We realize the weight of responsibility thus imposed and have endeavored to and believe we and all concerned have discharged it with conscientious rectitude and legal correctness.

With the foregoing conclusions, it remains to determine what is required of the county commissioners, respondents, in the premises.

The Act of 1891 says that the "proper officer" shall draw orders upon the county treasurer for the payment of bills, properly verified, presented for services rendered in re-indexing performed under the court's order. The county commissioners are the "proper officers" to do this: Lotz *v.* Durkin et al., Commissioners, 9 Lacka. Jurist, 34.

The Act of 1891 has been declared constitutional in In re Indexing of Deeds, etc., 22 Dist. R. 735, and it is interesting to note that there the court of Lehigh County had made an order for the re-indexing of deeds and mortgages by this same Russell Index Company in the recorder's office of that county, and the matter then before the court was a petition to revoke such order, which was refused.

Following the authority of Nicely *v.* Raker, 250 Pa. 386, previously cited in this opinion, substituting the term "county commissioners" for "county controller" there used, we must hold "the duties of the county commissioners are purely ministerial," and cannot do otherwise than enter decree in favor of the plaintiff and against the respondents at bar.

The reasons for court action set forth in the report of the bar committee and in our order have become more apparent upon recent discoveries of defects in the existing indices, further re-transcribing or re-indexing, barring destruction by fire or some such providential interposition, will not be again required for fifty or seventy-five years at least. The change in the system is as much of an improvement over the old, and as necessarily demanded, as like changes in methods and instruments and materials of service in all other fields of business activities in order to meet modern requirements and necessities, and as affecting the interests of the people of this county, no subject is of greater import of conservation than records relating to their title to or liens upon their real estate. The "current" Russell & Company index applied to use since Jan. 1, 1924, for deeds, has established its merits and verified all that was conceived in favor of the system.

The county commissioners were strictly within their rights to seek our adjudication in these proceedings from the view which they seem to have entertained; but in view of the authorities, both statutory and judicial decisions, we have cited, we cannot conceive of their doubt of the final result we have reached.

Russell Index Co. v. Susquehanna County Commissioners.

The question of the transfer of sheriff and tax deed books themselves from the prothonotary's office to the office of the recorder of deeds, referred to in the respondents' return, is foreign to the issue now before us, and for that reason we will not here pass upon it, and only suggest that the advantage of all deed books being in the office and custody of the same official and where indexed is manifest to all.

In this connection, it may be interesting to know that defendants in criminal cases paid into the county treasury of fines imposed during the calendar year 1924 net $4972.06, and from similar sources the present year to this date and now in the hands of the sheriff for payment to the county treasurer net $4031.59, or a total of $9003.65, with all costs paid by the defendants upon whom such fines were imposed.

And now, to wit, April 27, 1925, final judgment is hereby entered in favor of the plaintiff and against the defendants, and the writ of alternative mandamus issued Feb. 26, 1925, in these proceedings is hereby made peremptory, and such writ of peremptory mandamus is directed to issue in favor of the plaintiff, Russell Index Company, against the defendants, Hugh Jones, Edmund J. Holleran and Naaman H. Wilmarth, County Commissioners of Susquehanna County, commanding them to execute and issue to the said plaintiff therein warrant or order upon Rexford Maxey, County Treasurer, for the payment to said plaintiff of the sum of $8761.50, the amount appearing to be due to said plaintiff under certificate No. 3 of F. W. Barrett, Recorder of Deeds of Susquehanna County, bearing date Feb. 13, 1925, and issued by said recorder of deeds in conformity with the contract entered into by said recorder of deeds with the said Russell Index Company, under decree of the Court of Common Pleas of Susquehanna County, April Term, 1924, as of No. 161, April Term, 1924.

From Gerritt E. Gardner, Montrose. Pa.